UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

                                        File No. 1:92-CR-93

v.

                                        HON. ROBERT HOLMES BELL

ANDREW C. MENICHINO,

          Defendant.

_____/

## O P I N I O N

This matter comes before the Court on Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court.

### I.

Defendant Andrew C. Menichino originally was indicted in this Court in July 1992 on forty-six counts of bank fraud and money laundering. On December 14, 1992, pursuant to a plea agreement, Defendant entered a plea of guilty in this Court to fourteen counts of bank fraud, in violation of 18 U.S.C. §§ 2, 371, and 1344. On April 23, 1993, he was sentenced to 120 months in prison and three years of supervised release, the term of incarceration to be served consecutively to his two unexpired sentences in the Middle District of Florida. Pursuant to his plea agreement, the government moved to dismiss the other 32 counts of bank fraud charged against Defendant. In addition, Defendant was ordered to pay $5,315,635 in restitution.

On July 20, 1994, the Sixth Circuit affirmed Defendant's sentence, but remanded the matter for further proceedings as to the amount of restitution.  Defendant filed a delayed petition for rehearing, which was denied on June 27, 1995.  Mandate was re-issued on July 5, 1995.

Shortly before his petition for rehearing was denied, on May 5, 1995, Defendant filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  The government filed a response on August 7, 1995.  In the interim, in response to the remand order of the Sixth Circuit, the Court held a hearing to determine the amount of restitution Defendant could pay and issued an order amending the judgment of sentence and reducing the amount of restitution to $300,000.  (Oct. 19, 1995 Ord.; Docket #126.)  On August 13, 1996, the Court denied Defendant's § 2255 motion on the merits.  *See Menichino v. United States*, No. 1:95-CV-280 (W.D. Mich. Aug. 13, 1996) (Docket ##29, 30).  That decision was affirmed on August 21, 1998.  *Id.* (Docket #50).  Defendant also filed a motion to dismiss, which was transferred to the Sixth Circuit as a second or successive § 2255 motion.  *Id.* (Docket #45.)

Between January 1997 and January 1999, Defendant filed and appealed a litany of motions in the instant case, including multiple motions for writ of mandamus, to dismiss for subject matter jurisdiction, to recuse the undersigned, and for reconsideration of prior denials.  All motions were denied.  In addition, Defendant filed an independent action, ostensibly seeking a writ of mandamus.  That action was transferred to the Sixth Circuit as

a second or successive § 2255 petition. *See Menichino v. Office of the United States Attorney et al.*, No. 1:97-CV-1046 (W.D. Mich.) (Docket #8).   The Sixth Circuit subsequently dismissed the matter for want of prosecution. *Id.* (May 11, 1998 Ord.; Docket #10).

On May 5, 2000, Defendant was released from federal prison and began to serve his three-year term of supervised release.   He was allowed to transfer that term from the Western District of Michigan to the Western District of Pennsylvania.   On May 1, 2003, four days before the expiration of Defendant's term of supervised release, the United States Probation Office for the Western District of Michigan issued a petition alleging five violations of supervised release: (1) Defendant failed to pay restitution; (2) Defendant did not truthfully answer inquiries by his probation officer and follow her instructions; (3) Defendant committed a new crime, in violation of 18 U.S.C. § 1001, by making false statements to his probation officer concerning checking accounts and loans; (4) Defendant committed a new crime, in violation of 18 U.S.C. § 1001, by making false statements to his probation officer concerning his purchase of a Jaguar automobile; and (5) Defendant committed a new crime, in violation of 18 U.S.C. § 1344, by engaging in bank fraud by making false statements to a federally insured financial institution.   On May 2, 2003, a summons was issued for Defendant to appear before Magistrate Judge Joseph Scoville on June 2, 2003 to answer the probation petition.   Defendant retained counsel who, on two occasions, moved to adjourn the hearing to a later date.

The Court ultimately conducted the supervised release violation hearing on December 9, 2003.  The Court found that Defendant had committed the first two violations, specifically, that he had failed to pay restitution and had failed truthfully to answer his probation officer's inquiries.  The Court dismissed the remaining three alleged violations. The Court sentenced Defendant to eleven months incarceration followed by a twelve-month term of supervised release.  The Court further ordered Defendant to pay the remaining $292,000 of his original restitution order before the end of the first six months of his supervised release.  (Docket #180.)  Defendant appealed his conviction and sentence on the supervised release violation.  The Sixth Circuit affirmed on July 12, 2004.  (Docket #196.)

This matter now comes before the Court on Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court on December 24, 2003 for revocation of supervised release.  On October 5, 2004, Defendant, proceeding *pro se*, filed a motion pursuant to 28 U.S.C. §§ 1651 and 2255 and FED. R. CIV. P. 60(b) (Docket #198).  In the first two issues of the motion, for which he invoked jurisdiction under 28 U.S.C. § 1651 and FED. R. CIV. P. 60(b), Defendant challenged his original 1992 sentence on the basis of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004).  In grounds III through VII of the motion, Defendant raised various claims of ineffective assistance of counsel, including the failure to raise lack of jurisdiction, lack of venue, illegal sentence and prosecutorial misconduct.  For these remaining claims, he asserted jurisdiction under 28 U.S.C. § 2255.

4

On October 15, 2004, the Court issued an order summarily denying the motion (Docket #201).   In that order, however, the Court addressed only the *Blakely* issue. Defendant moved for clarification of the order on November 5, 2004 (Docket #207), seeking a merits determination on the remaining issues in his first application.   Thereafter, on August 26, 2005, Defendant, through counsel, filed another motion to vacate, set aside, or correct sentence under § 2255 (Docket #211).   In his second motion, which the Court construes as an amended motion, Defendant expands some of the unresolved issues in Defendant's October 5, 2004 motion.   The amended § 2255 motion (Docket # 211) now is before the Court.[1]

## II.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack.   28 U.S.C. § 2255.   To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the

---

[1]In light of the fact that the Court did not fully dispose of the initial motion to vacate filed on October 2, 2004, and, in particular, the fact that the Court did not resolve those portions of the motion invoking jurisdiction under § 2255, the Court concludes that the motion filed August 26, 2005 must be construed as an amended motion to vacate.   It therefore is neither second nor successive.   *See* 28 U.S.C. §§ 2244(b)(3)(A), 2255 ¶ 8.   The Court's resolution of the instant amended § 2255 motion also will resolve Defendant's pending motion for clarification (Docket #207).

guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *Frady*, 456 U.S. at 167-68; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). The procedural default rule does not apply, however, to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal, because the record may be inadequate to permit review. *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998); *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). Consequently, such claims may be raised for the first time in a § 2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir. 1995).

In an action to vacate or correct the sentence, a court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255.

> The statute "does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made."

*Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)).  No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995), *quoted in Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).  Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial.  *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

## III.

The files and records in this case conclusively show that Defendant is not entitled to relief in this action.

Defendant's motion is organized into five separate headings.  In the first section, he argues that he may raise his remaining four substantive claims in this § 2255 proceeding,

7

notwithstanding his procedural default of the claims on direct review, because appellate counsel rendered ineffective assistance by failing to raise the claims on direct appeal. Second, Defendant argues that this Court lacked subject matter jurisdiction to enter the order of restitution because the victim bank no longer exists. Third, he argues that the Court lacked subject matter jurisdiction to convict him of the underlying 14 counts of bank fraud because the government did not and could not prove that the bank in issue was federally insured at the time the fraud occurred. Fourth, Defendant asserts that the court lacked jurisdiction to conduct the revocation hearing because, by delaying the hearing on revocation until more than six months after the end of the original term of supervised release, the Court violated Defendant's right to due process, thereby stripping it of jurisdiction to adjudicate the alleged violations. Fifth, Defendant contends that counsel at the revocation hearing provided ineffective assistance by failing to object to the illegal restitution order, failing to object to the jurisdiction of the Court, failing to investigate and present a defense, and abandoning his duty of loyalty to his client.

A.    Procedurally Defaulted Claims

Defendant's substantive claims, with the exception of his independent claims of ineffective assistance of counsel, are procedurally defaulted because he failed to raise those claims on direct appeal. *See Frady*, 456 U.S. at 167-68. He therefore is not entitled to relief unless he demonstrates either cause and actual prejudice or that he is actually innocent of the offense. *Bousley*, 523 U.S. at 622.

8

To show cause excusing a procedural default, a defendant must point to "some objective factor external to the defense" that prohibited him from raising his claim on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Put another way, cause requires a showing of some "external impediment" preventing a defendant from raising the issue on direct appeal. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). To show prejudice, a defendant must demonstrate an error that worked to his actual and substantial disadvantage. *Frady*, 456 U.S. at 170. Failure to show one or the other will preclude review of his claim. *See Engel v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

As cause for his procedural default, Defendant asserts that he was deprived of the effective assistance of counsel on appeal. Attorney error may constitute cause excusing a procedural default if the error amounts to the ineffective assistance of counsel. *Murray*, 477 U.S. at 488. To establish a claim of ineffective assistance of counsel, Defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that

counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if he was not prejudiced by counsel's error.  *Id.* at 691. To establish prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  When deciding a claim of ineffective assistance of counsel, a court "need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'"  *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

In the context of a claim of ineffective assistance on appeal, the Supreme Court has held that an appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S.

745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2002). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289.

As a result, in order to assess whether Defendant has proved whether his procedural default should be excused on the basis of the ineffective assistance of appellate counsel, the Court must consider the merits of Defendant's substantive claims in order to determine whether they were clearly stronger than the issues counsel raised on appeal.

## 1.    Court lacked jurisdiction to enter the order of restitution

Defendant asserts that the Court lacked subject matter jurisdiction to enter an order of restitution against him. He contends that the Court failed to prove that any entity existed to whom restitution was owed. Specifically, he argues that the financial institution he admitted to defrauding between 1986 and 1988 was Great Lakes Savings and Loan, which changed its name to Great Lakes Bancorporation on June 30, 1987. Defendant contends that Great Lakes Bancorporation ceased to exist on February 8, 1995, when it became Great Lakes Bancorp, operating under a different certificate identification number. Thereafter, on

April 1, 2000, Great Lakes Bancorp's was merged into TCF National Bank. According to Defendant, both Great Lakes Bancorporation and Great Lakes Bancorp wrote off millions of dollars in commercial and industrial loans between 1992 and 1995, the period between Defendant's initial sentencing and the remanded hearing on the order of restitution. He asserts that, because the loans were written off, no debt existed that would support jurisdiction. In addition, he argues, the government failed to demonstrate that any debt of Great Lakes Bancorp survived the purchase, acquisition and merger of assets by TCF National Bank. Defendant contends that 18 U.S.C. § 3664 authorizes an order of restitution only to an actual victim of the conduct that is the basis of the offense of conviction. He argues that the government failed to prove that the company named in the indictment (Great Lakes Bancorp) continued to exist because it merged into TCF Bank and its debts were written off. He argues that the successor bank should not be considered a victim.

No aspect of Defendant's claim supports the requested relief. First, to the extent Defendant may intend to challenge the imposition of restitution in the revocation hearing, the claim is factually meritless. The Court did not impose a new order of restitution on December 24, 2003, when it revoked Defendant's supervised release. Instead, the Court merely ordered that the remaining balance of $292,850 of the previously ordered $300,000 restitution be paid within the first six months of his new period of supervised release.

Second, to the extent Defendant challenges the original order of restitution (which both his arguments suggest, the claim is not properly brought in a § 2255 proceeding directed

to the revocation hearing.  *See* RULES GOVERNING SEC. 2255 PROCEEDINGS, Rule 2(d) ("A moving party who seeks relief from more than one judgment must file a separate motion covering each judgment.").  Defendant has brought this § 2255 action as a challenge to the order of revocation of his supervised release issued December 24, 2003.  Any arguments directed to the amended order of restitution issued August 10, 1995 are not properly before the Court.

Third, even were Defendant entitled to challenge the 1995 amended order of restitution, his claim is second or successive to his prior § 2255 petition, which was denied on August 13, 1996.  *See Menichino v. United States*, No. 1:95-CV-280 (W.D. Mich. Aug. 13, 1996) (Docket ##29, 30).  Before this Court may entertain a second or successive § 2255 motion, it must be certified by the Court of Appeals for the Sixth Circuit to contain: (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.  *See* 28 U.S.C. § 2255.  Because the Sixth Circuit has made no such certification, this Court is without jurisdiction to hear the claim.

### 2.     Court lacked jurisdiction to convict Defendant of the offense because no federal crime existed

Defendant argues that this Court lacked subject matter jurisdiction to convict him of federal bank fraud charges in 1993 because the government did not and could not

demonstrate that, during the alleged period of the offenses between 1986 and 1988, the Grand Rapids branch of Great Lakes Bancorp was insured by the FDIC, a necessary element for conviction under 18 U.S.C. § 1344.  Defendant's argument is patently frivolous on numerous grounds.

First, as with the prior claim, Defendant's second procedurally defaulted ground is a challenge to his underlying conviction rather than the revocation of his supervised release. As a consequence, the claim is not properly brought in a § 2255 proceeding directed to the revocation hearing.  *See* RULES GOVERNING SEC. 2255 PROCEEDINGS, Rule 2(d).

Second, to the extent Defendant challenges his 1993 conviction, his claim again is second or successive to the § 2255 petition on August 13, 1996.  *See Menichino v. United States*, No. 1:95-CV-280 (W.D. Mich. Aug. 13, 1996) (Docket ##29, 30).  Before this Court may entertain a second or successive § 2255 motion, it must be certified by the Court of Appeals for the Sixth Circuit in accordance with 28 U.S.C. § 2255.  Because the Sixth Circuit has made no such certification, this Court is without jurisdiction to hear the claim.

Third, even were the substance of the claim properly before this Court, the Court notes that the claim repeatedly has been raised before and rejected by this Court. *See United States v. Menichino*, No. 1:02-CV-93 (W.D. Mich.) (Feb. 7, 1997 Ord., Docket #137; Aug. 11, 1997 Ord. Denying Reconsid., Docket #141; Sept. 8, 1997 Ord. Denying Reconsid., Docket #145; Oct. 1, 1997 Ord. Denying Reconsid. and Ord. to Show Cause, Docket #149).  The Sixth Circuit affirmed this Court's second denial of reconsideration.  *See United States v.*

14

*Menichino*, No. 97-2055 (6th Cir. Dec. 17, 1998) (Dist. Ct. Docket #163).  In addition, this Court previously transferred another § 2255 motion to the Sixth Circuit in which Defendant attempted to raise the issue yet again because it was a second or successive petition.  *See Menichino v. Office of the United States Attorney, et al.*, No. 1:97-CV-1046 (W.D. Mich. Feb. 26, 1998).

No reasonable attorney would conclude that such a claim should have been raised yet again, a dozen years after Defendant's conviction, in a proceeding challenging only the revocation of supervised release, and in the face of multiple rejections of the claim that constitute the law of this case.[2]  Defendant's reliance upon a tangential remark by this Court at the revocation hearing is of no relevance to the reasonableness of his position.  Defendant argues that a reasonable attorney would have seen from the transcript of the proceeding that the Court improperly ordered restitution be made to the Court rather than to a victim of the crime.  As is clear from the context of the comment, however, the Court was not addressing the question whether Great Lakes Bankcorp's entitlement to restitution transferred to TCF National Bank; that question was not in issue in the revocation proceeding.  Instead, the Court merely made a comment about Defendant's blatant disregard of the fact that his obligation to pay restitution was a requirement of the Court's judgment as opposed to a

_____

[2]Indeed, reasonable counsel would have been even more cautious in light of this Court's earlier order to show cause directed at Defendant's previous attorney, requiring counsel to show cause why FED. R. CIV. P. 11 sanctions should not be imposed for the frivolous and repeated presentation of the identical claim. (Oct. 1, 1997 Ord. to Show Cause; Docket #149.)

private relationship that could be renegotiated with the bank or probation officer at

Defendant's will:

> This much is clear from listening to the testimony: that Mr. Menichino has changed his location initially from Florida to here and now he's back in Pennsylvania, but his <u>modus</u> <u>operandi</u> remains the same.  And that is an arrogance toward authority, an arrogance toward this Court and its orders, and it comes through loud and clearly even though he's not testified from those who have dealt with him.

> The restitution was not to a Michigan bank.  It was to the Court.  It was part of the sentence.  And the restitution order is very clear.  Restitution shall be paid in full no later than the term of the defendant's supervised release.

> I don't care what kind of a deal someone thinks they can cut with a probation officer.  This Court has to sign off.  This Court never signed off. This Court does not agree to cut restitution orders for the benefit of someone either bushwhacking a PO or representing to the PO their situation.  According to the Court's understanding, $7,150 was all the payment that was made on that restitution order.

> Now, it remains clear that the Great Lakes Bankcorp lost $5,315,635 in this underlying sentenced matter that the Court so found on April 2nd, 1993. That was on the heels, if you will, of a Florida matter that involved apparently even more money than that.  Due to other matters, the amount of restitution was reduced all the way down to $300,000.  Rather than saying grace and making some kind of contribution to it, only $7,000 was paid from someone who appears, as the Court reviews the machinations of vehicles and corporations and loans and this sham trust that I see the family members engaged in here – and it is a sham, there's no question about it; 8-A is very clear it was a sham – appears to have had his hands on lots of money.  He's married to a wealthy woman, has his hands on lots more money.  It wasn't paid.  That's a clear violation of Condition No. 3.

(Supv. Rel. Viol. Hrg. Tr. at 200-01; Docket #184.)

For all the stated reasons, Defendant has failed to demonstrate merit to his claim and

therefore has failed to demonstrate cause excusing his procedural default.

### 3.     Delay of revocation hearing denied due process

In his third procedurally defaulted claim, Defendant argues that the Court lacked jurisdiction to conduct the revocation proceeding more than six months after the end of Defendant's original term of supervised release.  He contends that the delay of the hearing violated his right to due process and stripped the Court of jurisdiction to revoke his then-expired sentence.

> The plain language of 18 U.S.C. § 3583(e)(3) provides that the district court may:
>
> revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on post-release supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation. . . .

18 U.S.C. § 3583(e).  Prior to 1994, Section 3583(e)(3) was silent as to whether the power to revoke supervised release terminates at the end of the supervisory period.  Section 110505(3) of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 2016-17, added subsection (i) to 18 U.S.C. § 3583, which specifically extends the court's authority to hold a violation hearing after the end of the period of supervised release for "any period reasonably necessary for the adjudication," if a summons or warrant has been issued during the period of supervised release.

Since Defendant's conviction occurred prior to 1994, the pre-1994 version of § 3583(e) applies to this case.  *See Johnson v. United States*, 529 U.S. 694 (2000).  Nevertheless, the courts that have addressed the question have held that the 1994 amendment

17

did not substantively alter the authority of the district courts. Instead, "the most likely purpose of the amendment was to make absolutely clear Congress' earlier intention that sentencing courts have the authority to hold hearings to revoke or extend supervised release after expiration of the original term if they issue a summons or warrant during the release period." *United States v. Morales,* 45 F.3d 693, 701 (2d Cir. 1995). *See also United States v. Sczubelek,* 402 F.3d 175, 179-80 (3d Cir. 2005); *United States v. Naranjo,* 259 F.3d 379, 382 (5th Cir. 2001); *United States v. Hondras,* 296 F.3d 601, 602 (7th Cir. 2002); *United States v. Neville,* 985 F.2d 992, 995-96 (9th Cir. 1993). The plain language of the statute allows for a reasonable period of continued jurisdiction by reference to the "Federal Rules of Criminal Procedure that are applicable to probation revocation." FED. R. CRIM. P. 32.1(a)(2) provides for a hearing "within a reasonable time" when a court is considering revocation or supervised release. Under the plain language of the statute and Federal Rule of Criminal Procedure 32.1(a)(2), a district court may exercise jurisdiction to revoke a term of supervised release and sentence an individual to prison when an arrest warrant was issued during the term but the revocation hearing was not held until after the term expired. *See Barton,* 26 F.3d 490; *Neville,* 985 F.2d at 996. *See also Morales,* 45 F.3d 693 (affirming district court's jurisdiction to modify a term of supervised release pursuant to 18 U.S.C. § 3583(e)(2) after date of supervised release was scheduled to expire).

In addition, as other courts have noted, in the absence of such an extension, the district court could also lose jurisdiction over persons whose actions or inactions frustrated the

execution of an arrest warrant prior to the end of the supervision term. *Sczubelek*, 402 F.3d at 179. Similarly, "[i]f the district court lost jurisdiction upon the lapse of the term of supervised release, persons who violated the conditions of their release near the end of the supervisory period would be immune to revocation." *See Barton*, 26 F.3d at 492.

The Court therefore concludes that it retained jurisdiction to hear the timely noticed probation violations within a reasonable period after the expiration of the period of supervised release. Defendant asserts, however, that six months is an unreasonable period and that he has been deprived of due process by the delay.

Other courts have recognized that periods significantly longer than six months may be reasonable depending on the circumstances of the case. For example, in *United States v. Ramos*, 401 F.3d 111, 116-17 (2d Cir. 2005), a revocation warrant was issued three days before the expiration of the defendant's supervised release period of May 10, 2001. The warrant alleged that the defendant had violated state law and was based on a state arrest for burglary and criminal mischief, of which the federal probation officer learned in November 2000. The state charges remained pending and, on April 23, 2001, the probation officer requested that a warrant be issue for violation of supervised release. On December 11, 2001, Ramos was convicted in state court of burglary and criminal mischief, and he was sentenced on February 1, 2002. Ramos' revocation hearing was set for November 1, 2002. Ramos, however, requested adjournment to challenge the court's jurisdiction and subsequently filed a motion to dismiss. The court eventually denied the motion to dismiss, and a revocation

hearing was held on March 25, 2004. Notwithstanding the nearly three-year delay, the Second Circuit held that the period between issuance of the warrant to the revocation hearing was reasonable. *Id.* at 117. The Ramos court relied upon the reasonableness of the federal court's decision to wait for the state court to adjudicate defendant's guilt on the offenses that were alleged to constitute supervised release violations. *Id.* at 118. *See also Naranjo*, 259 F.3d 379 (where supervised release violation warrant was issued four days before expiration of term and held in abeyance pending state-court adjudication of charges, revocation hearing held more than three years after expiration of supervised release term was still reasonable).

In the instant case, the delay was patently reasonable. Here, Defendant initiated both continuances, the first time for the convenience of defense counsel and the second to address the voluminous documents and evidence developed as a result of Defendant's complicated financial scheme. The continuances were sought and granted in order to preserve Defendant's due process right to defend the charged violations. *See Neville*, 985 F.2d at 997 (discussing necessity of delaying hearing beyond end of supervised release term in order to preserve a defendant's due process right to defend); *Barton*, 26 F.3d at 492 (same). The period of delay was entirely reasonable.

Further, even were the delay unreasonable, unreasonable delay does not itself deprive a defendant accused of a supervised release violation of due process. *See United States v. Throneburg*, 87 F.3d 851, 853 (6th Cir. 1996). Instead, "due process concerns about delay come into play only when the delay has prejudiced the defendant's ability to contest the

validity of the revocation." *Id.  See also Barker v. Wingo*, 407 U.S. 514, 530 (1972) (in revocation context, to determine due process violation, courts balance the length of delay, the reason for the delay, the probationer's assertion of his right to a prompt hearing and prejudice to the probationer); *United States v. Intini*, 18 Fed. Appx. 411, 419 (7th Cir. 2001) (although delay of four years was unreasonable, defendant could not demonstrate delay was prejudicial).  Defendant has not even attempted to demonstrate that he was prejudiced in any way by the delay he himself sought.

Finally, the Court rejects Defendant's suggestion that the government impermissibly and vindictively delayed charging Defendant with the supervised release violations until the end of the supervised release period.  As the government notes, however, the charged violations were themselves cumulative.  The failure to pay restitution was provable only after Defendant had failed to make a good faith effort during the period he was allowed to pay – the entire period of supervised release.  Moreover, Defendant's lies to his probation officer were repeated and only fully disclosed as the supervision period continued.  No basis exists for finding improper conduct by the government.

For all the stated reasons, Defendant's claim that he was denied due process by the delay in his revocation hearing is without merit.

B.    Ineffective Assistance of Counsel at Revocation Hearing

In his independent claim of ineffective assistance of counsel, Defendant contends that his hearing attorney was ineffective in four ways: (1) failing to object to an illegal restitution

order; (2) failing to object to the jurisdiction of the court; (3) failing to investigate and present a case regarding the ability to pay; and (d) abandoning his duty of loyalty to his client.

As the Court previously has discussed, in order to establish a claim of ineffective assistance of counsel, Defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687-88. Defendant can demonstrate neither requirement.

Defendant's first two claims of attorney error repeat claims this Court has found to be frivolous. As the Court has held, no reasonable attorney, whether representing Defendant at the revocation hearing or on appeal, would have challenged the Court's jurisdiction to impose a restitution order originally entered in 1995. Further, no reasonable attorney would have raised a challenge in the 2004 revocation hearing to the Court's jurisdiction to convict and sentence Defendant of the crime in 1993.

Further, Defendant has failed entirely to support his third claim of attorney error. It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to

22

investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Defendant alleges that his attorney failed to find and introduce evidence that would show Defendant's real business relationships and his true ability to pay. However, Defendant has proffered no specific information about what counsel allegedly should have discovered and proved. Defendant makes no effort to show that any information exists that would have contradicted the government's extensive proof of Defendant's complex and interwoven financial dealings, including his business involvements, trust access, and loan receipts. Instead, Defendant relies only on the general statement that his actual financial ability to pay should have been investigated.

In sum, Defendant has made no effort to demonstrate either that counsel did not investigate or that he was ineffective in failing to do so. He therefore fails entirely to meet

23

his burden of proof to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel's decision not to present additional evidence was sound trial strategy. *Strickland*, 466 U.S. at 689.

In his final claim of ineffective assistance, Defendant contends that counsel abandoned his duty of loyalty to his client. Defendant objects to a brief series of questions and answers between the Court and defense counsel taken from the following exchange:

> THE COURT: I presume the whole matter is contested?

> MR. STANLEY: Your Honor, respectfully, my client has asked me to address the Court. We have been trying to settle this issue. It is my client's opinion that the primary stumbling –

> THE COURT: I want your opinion. You're his lawyer.

> MR. STANLEY: Your Honor, the –

> THE COURT: Do you have independence here in this matter?

> MR. STANLEY: Do I have independence?

> THE COURT: Yes.

> MR. STANLEY: I have my judgment to follow, my ethical responsibilities to the Court and to my client. I have my opinion about this case. My client would be well-advised to try to settle this case. He has tried to settle this case. We have in writing and in person made a number of different offers.

> The issue appears to be primarily the failure to pay restitution or the vast majority of restitution. He advises me as of yesterday his wife in his wife's name has secured a loan of $150,000 and would pay that forthwith. He believes he could pay the balance off in six months. His wife believes it would probably take closer to a year to do that, and they would do that.

24

The difficulty has become the government has also required that he plead to a Class B violation, and he does not believe that he's committed a Class B violation. I've reviewed all the complaints with him, the supervised release. I have advised him that potentially there certainly could be technical violations even if he does not believe there were violations and he would be well-advised to try to resolve this case. And at this point he remains unwilling to plead to a Class B violation, but he does wish to communicate to the Court that he's ready, willing and able to pay the restitution if that would resolve this issue.

(12/9/03 Hrg. Tr. at 3-4; Docket #184.)  Defendant alleges that, during the course of this exchange, defense counsel abandoned his duty of loyalty by choosing to advise the Court that he disagreed with his client and that he did not want to conduct the hearing.

Later in the hearing, the Court reprimanded counsel for the form of his questions:

THE COURT: Mr. Stanley, you are going pretty close to the line. Are you a sycophant of your client or are you an officer of this Court?

MR. STANLEY: I'm an officer of this Court, Your Honor.

THE COURT: Okay. Behave like one, then. You've slipped in – the value of the collateral on 1-A is $176,000. You slipped right by that by saying the amount of the mortgage is 176. You have been – well, I don't know. This may be taken up later by you yourself, but I'm not pleased with your representations or your examination here.

MR. STANLEY: Thank you for the Court's observations, your Honor.

(12/9/03 Hrg. Tr. at 64; Docket #184.)

Contrary to Defendant's representations, the quoted passage in no way demonstrates less than vigorous advocacy by defense counsel. In the first exchange, the Court asked whether all issues would be contested. Counsel responded that Defendant wanted him to place information before the Court about settlement. The Court insisted that counsel respond

25

as an officer of the Court with the facts and his position, not merely tell the Court what his client wanted him to say. Counsel provided the background concerning Defendant's offers, which Defendant apparently wished the Court to know. Counsel then represented that the parties were unable to settle because the government wanted more than a settlement of restitution. Defense counsel at no time suggested that he was unprepared to proceed in the case. The entire exchange in no way undermined the defense, and Defendant has pointed to no time in the transcript in which counsel was less than a vigorous advocate. Indeed, the second exchange resulted from the Court's perception that counsel may have been representing his client's position so vigorously that he was straying from the truthful presentation of the facts.

In sum, Defendant has failed to point to evidence demonstrating any abandonment of defense counsel's advocacy role or any prejudice arising from that abandonment. He therefore fails to meet either portion of the *Strickland* test.

Defendant next shifts his argument about counsel's advocacy, suggesting that counsel had a conflict of interest with his client because counsel had an interest in preserving his own good reputation with the Court. Defendant suggests, therefore, that the appropriate standard of review for counsel's performance is not that of *Strickland*, but that of *Cuyler v. Sullivan*, 446 U.S. 335, 342-45 (1980). In *Sullivan*, the Supreme Court held that, when an attorney represents two clients and where no objection has been raised at trial, a defendant claiming ineffective assistance of counsel based on a conflict of interest "must demonstrate that an

actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 346-47. A court cannot presume the existence of a conflict of interest that resulted in ineffective assistance of counsel. *Id.* "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id.* at 349. However, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350. To show an actual conflict of interest, a defendant must demonstrate "a conflict *that affected counsel's performance* – as opposed to a mere theoretical division of loyalties. . . . [A] defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief." *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 1243 (2002) (emphasis in original).

The standard of *Sullivan* is inapplicable to the instant case. Before *Mickens*, the Sixth Circuit recognized that other types of conflicts could warrant application of the *Sullivan* standard. *See, e.g., Riggs v. United States*, 209 F.3d 828 (6th Cir. 2000) (successive representation may warrant application of *Sullivan* test); *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993) (conflict when defense counsel is subject to criminal investigation by the same prosecutor). However, in a footnote, the *Mickens* Court noted that the *Sullivan* standard should not necessarily be applied to all kinds of attorney conflicts:

> It must be said . . . that the language of *Sullivan* does not clearly establish, or indeed even support, such an expansive application. . . . Both *Sullivan* itself

27

and *Holloway* stressed the high probability of prejudice arising from multiple concurrent representation and the difficulty of proving that prejudice. Not all attorney conflicts present comparable conflicts.

*Mickens*, 122 S. Ct. at 1245. Since *Mickens*, the Sixth Circuit has recognized that only conflicts of concurrent dual representation are clearly established by the Supreme Court. *See Smith v. Hofbauer*, 312 F.3d 809 (6th Cir. 2002). In *Moss v. United States*, 323 F.3d 445, 460-62 (6th Cir. 2003), the Sixth Circuit noted that post-*Mickens* courts have been reluctant to apply *Sullivan* to other kinds of attorney conflicts and have instead analyzed cases carefully for their similarity to the dual representation situation presented in *Sullivan*. *Id.* at 460-61. While the *Moss* court found that the successive representations in issue warranted application of the *Sullivan* standard, Defendant failed to show the actual conflict necessary under *Sullivan*. *Id.* at 467. The *Moss* Court, however, rejected defendant's claim that counsel also had a conflict subject to *Sullivan* review because he was in fear of being investigated by the United States Attorney for possible participation in an attempted bribery by another defendant. *Id.* at 473-74. The *Moss* court found that no controlling authority supported the argument that an attorney's fear of prosecution presented a conflict of interest. *Id.* In addition, the Court found that the defendant's claim was factually unsupported. *Id.*

Defendant's argument in the instant case also is both legally and factually unsupported. While all attorneys must concern themselves with their obligations as officers of the court as well as representatives of their clients' interests, no law suggests that the fact of those concurrent obligations results in the kind of conflict of interest comparable to that

28

presented in *Sullivan*.  Further, even were the standard set forth in *Sullivan* applicable to the instant case, Defendant has entirely failed make the requisite showing of actual conflict, because he has shown only a theoretical division of loyalties by his attorney.  *See Moss*, 323 F.3d at 467 n.23 (to show "actual conflict" under *Sullivan,* petitioner must "demonstrate a real or genuine, as opposed to a hypothetical, conflict of interest.").  Defendant's final claim of ineffective assistance of counsel therefore is rejected.

## IV.

The files and records in this case conclusively show that the Defendant is entitled to no relief under § 2255.  Accordingly no evidentiary hearing is required to resolve the merits of the pending motion.  For the reasons stated herein, the motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 must be denied. In addition, Defendant's motion for clarification is granted and the Court's October 10, 2004 order is clarified as set forth in this opinion.  An order consistent with this opinion will be entered.


Date:   __January 18, 2006__          /s/ Robert Holmes Bell
                                       ROBERT HOLMES BELL
                                       CHIEF UNITED STATES DISTRICT JUDGE